# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DANA BOWMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:13-cv-0630 |
| v. | ) Judge Aleta A. Trauger |
| | ) |
| KISAN, LLC, | ) |
| | ) |
| Defendant, | ) |

## MEMORANDUM

Defendant Kisan, LLC ("Kisan") has filed a Motion to Dismiss and, In the Alternative, Motion for More Definite Statement (Docket No. 32), to which the plaintiff has filed a Response in opposition (Docket No. 37), and Kisan has filed a Reply (Docket No. 38). For the reasons stated herein, the motion will be granted and the case will be dismissed.

## BACKGROUND

Kisan operates the Drake Hotel in Nashville, Tennessee. The plaintiff, Dana Bowman, is a legally disabled American veteran and a Texas resident. On June 27, 2013, plaintiff Bowman filed a Complaint (Docket No. 1) against Kisan under Title III of the Americans with Disabilities Act ("ADA"), alleging that Kisan had violated the ADA because its pool did not have a lift or other means of access for disabled persons.[1] Bowman has filed numerous Title III complaints in

---

[1] The docket indicates that Kisan received the Summons and Complaint on July 3, 2013. (Docket No. 6.)

this district and apparently across the country against businesses that allegedly operate in violation of the ADA. Of the seven cases filed in this district, most have settled.[2]

In his original Complaint, Bowman alleged that, at some unspecified time, he had a "speaking engagement" in the Nashville area, called the Drake Hotel to "inquire[] whether Defendant's hotel pool had a lift or other means of access for disabled persons such as Plaintiff," and was told by an unspecified hotel representative that the hotel pool did not have a lift or other means of access. Bowman alleged that he "independently verified the absence of pool lifts[,]" but the original Complaint provided no information as to when or how this purported verification took place. Bowman alleged that he decided not to stay at the Drake Hotel because it lacked a pool lift and that, upon information and belief, other disabled persons were deterred from staying there for the same reason. Bowman also alleged that he or his agent "intends to return and/or has returned to Defendant's Hotel to ascertain whether it remains in violation of the ADA," and that he personally "expects to return to Nashville on business and seeks to use Defendant's hotel."

On March 7, 2014, Bowman filed an Amended Complaint, which is now the operative pleading in the case. (Docket No. 22.) In the Amended Complaint, Bowman re-asserts essentially the same allegations as the original Complaint with respect to Kisan's purported lack of a pool lift.[3] However, Bowman's Amended Complaint also asserts numerous additional

---

[2] *See Bowman v. Fourth and Church, LLC, et al.*, No. 3:13-cv-0631, Docket No. 35, Consent Decree (resolving Case Nos. 3:13-cv-0631, 3:13-cv-0632, 3:13-cv-633, and 3:13-cv-0634); *Bowman v. Nanda*, No. 3:13-cv-0635, Docket No. 40, Order (reflecting notification of settlement); *Bowman v. Patel*, No. 3:13-cv-0630, Docket No. 16, Order of Dismissal; and *Bowman v. Maverick Mgmt., LLC*, No. 3:13-cv-0637, Docket No. 19, Order Dismissing Case.

[3] As set forth herein, evidence filed by Kisan demonstrates that Bowman's Amended Complaint allegation that Kisan's pool lacked a lift was false when the Amended Complaint was filed. As of July 12, 2013 – about eight months earlier – Kisan had installed an ADA-compliant pool lift.

violations against Kisan, alleging that the Drake Hotel violated the ADA by, among other things, failing to have an accessible route from its parking lot to the lobby, failing to have a designated handicap parking spot, and failing to have a handicapped accessible sales and service counter in its lobby. Bowman does not allege that he personally encountered these additional alleged violations or that he called the hotel about them in advance, as he did with respect to the pool lift at some point before filing his original Complaint on June 27, 2013.

## **KISAN'S MOTION AND THE 12(B)(1) STANDARD OF REVIEW**

Among other things, Kisan has moved under Rule 12(b)(1) to challenge the existence of subject matter jurisdiction in this case.[4] Kisan argues that Bowman lacks standing because he did not suffer particularized injury and has not alleged a sufficient threat of future harm, or, alternatively, that Bowman's claims are moot because Kisan fixed the pool lift on July 12, 2013 pursuant to a purchase and installation order that predates Bowman's Complaint. As it relates to standing, Kisan's 12(b)(1) challenge encompasses both "facial" and "factual" attacks on the court's subject matter jurisdiction, placing the burden on Bowman to show jurisdiction as to both forms of attack. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005); *see also Gentek Bldg. Prods, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (describing

---

[4] Although Kisan has raised this motion beyond the dispositive motion deadline set forth in the court's initial Case Management Order (Docket No. 18), Kisan did so in response to a recent court order (Docket No. 18) and, regardless, the court may consider the existence of subject matter jurisdiction at any time. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *E. Brooks Books, Inc. v. City of Memphis,* 633 F.3d 459, 464 n.3 (6th Cir. 2011) ("The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself.") (quoting *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005)).

standard for facial and factual attacks).[5]  By contrast, when a party asserts that the other party's claims (for which that party had standing at the time of suit) have since become moot, the burden is on the party claiming mootness to show that the claims are, in fact, moot. *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 524 (6th Cir. 2001).

In support of its motion, Kisan has filed the Declaration of Bhavesh Patel, Kisan's Manager, which attaches certain evidentiary materials relating to Kisan's closure of the pool and its efforts to bring it into compliance with the ADA. (Docket No. 32, Ex. 1.) In support of his opposition to the motion, Bowman has filed the Declaration of Scott Hull (Docket No. 37, Ex. 1), which attaches pictures of the pool as of June 27, 2013, and the Declaration of Mary Dodson (*Id.*, Ex. 4), in which Dodson avers that, on January 30, 2014 (well after Bowman filed this lawsuit), she visited the Drake Hotel and observed the additional ADA violations that Bowman later stated in his Amended Complaint.

## ANALYSIS

### I. Standing

---

[5] A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading. *Gentek*, 491 F.3d at 330. When reviewing a facial attack, a district court must take the allegations in the complaint as true. *Id.* If those allegations establish federal claims, then the facial challenge fails. *Id.* By contrast, where there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumption of truthfulness applies to the allegations. *Id.* If a factual attack raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that federal subject matter jurisdiction does or does not exist. *Id.* In conducting its review of a factual attack, the district court has wide discretion to consider affidavits, documents, and hearing testimony. *Id.* Here, Bowman erroneously claims that, in *Gaylor v. Hamilton Crossing CMBS*, -- F. App'x -- , 2014 WL 4357498 (6th Cir. Sept. 4, 2014), the Sixth Circuit required district courts to evaluate all subject matter jurisdictional challenges in ADA Title III cases under the "facial" attack standard. This is a patent misconstruction of *Gaylor*, which involved only a facial attack in the first place. *Id.* at *2.

To establish Article III standing to seek injunctive relief, a plaintiff must satisfy three elements: (1) the plaintiff suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) the injury must be "fairly traceable to the challenged action of the defendant;" and (3) "it must be likely . . . that the injury will be redressed by a favorable decision." *Gaylor v. Hamilton Crossing CMBS*, -- F. App'x -- , 2014 WL 4357498, at *3 (6th Cir. Sept. 4, 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Klein v. United States Dep't of Energy*, 753 F.3d 576, 579 (6th Cir. 2014). The two components of the first element are at issue here.

To show concrete and particularized injury in fact, a plaintiff must show an injury that "affect[s] the plaintiff in a personal and individual way." *Gaylor*, 2014 WL 4357498, at *3 (citing *Lujan*, 504 U.S. at 561 n.1). Under the ADA, a disabled individual is not required to "engage in a futile gesture if such person has *actual notice* that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1) (emphasis added). Here, Bowman does not allege that he personally experienced any ADA violation at the Drake Hotel (including the pool lift), but he alleges that the court should find that he nevertheless has standing under the "futile gesture" exception. The problem for Bowman is that he does not allege sufficient facts to show that he had "actual notice" that the Drake Hotel was in violation of the ADA or, more importantly, that it would be in violation of the ADA at the time Bowman sought to stay there. Bowman's alleged notice stems from his bare allegation that he called the hotel at an unspecified time, spoke to an unspecified person on the other end of the line, inquired whether the hotel's pool currently had a pool lift, sought to stay at the hotel at an unspecified time, and allegedly was told that the pool did not currently have a lift. Bowman does not allege that he spoke with a responsible person in hotel management or that he received any

5

specific confirmation (orally or in writing) from a responsible agent of the hotel that Kisan was aware of the ADA violation and intended not to rectify it by the time Bowman arrived.

In *Gaylor*, the Sixth Circuit appeared to assume that any claim of particularized injury would require encountering an architectural barrier or, at a minimum, having actual knowledge of that barrier. In that case, on which Bowman relies in his Response, the plaintiff "personally observed and encountered an architectural barrier to access" in the defendant's parking lot, "causing him to experience serious difficulty and depriving him of equal access when parking his vehicle and navigating the property." 2014 WL 4357498, at *3. These allegations, combined with the common-sense inference that "the barriers to accessibility [the plaintiff] encountered would interfere with a mobility impaired individual's full and equal enjoyment of [the defendant's] property," were sufficient to establish that the plaintiff had been personally affected by the ADA violations. *Id.* at *3-*4. Here, by contrast, Bowman did not physically encounter any barriers and did not acquire "actual knowledge" of any barriers. The bare allegations concerning his phone call to the Drake Hotel are insufficient to support an inference of "actual knowledge."

In addition, Bowman's unsubstantiated statement that he "independently verified" the existence of an ADA violation, for which he provides no context or explanation, is conclusory and is insufficient to support a finding of particularized injury. If Bowman actually visited Nashville on business at an unspecified time in the past – as he claims – nothing would have prevented him from visiting the Drake Hotel to ascertain whether it in fact was not in compliance with the ADA during Bowman's visit. At a minimum, Bowman could have written about the issue to the Drake Hotel or otherwise obtained a statement from a responsible person at the hotel

6

concerning the pool lift, establishing that the hotel was both currently out of compliance with the ADA and would remain out of compliance when Bowman intended to visit.

For all of these reasons, Bowman's allegations do not support a plausible inference of particularized injury, he lacks standing, and Kisan's facial challenge has merit.

Even if the court were to give Bowman a pass on his insufficient allegations of particularized injury, Kisan's factual attack concerning the particularized injury requirement also has merit. Evidence presented by Kisan shows that the pool was not even open to the public at the time Bowman called the hotel: in fact, the pool was closed for repair and remodeling from January 2012 through July 3, 2013. In May 2013, well before Bowman filed his original Complaint in this case, Kisan ordered an ADA-compliant pool lift to be installed in connection with the pool's reopening to the public. Under this preexisting purchase order, Kisan's contractor installed the pool lift on July 12, 2013, shortly after Bowman filed the Complaint. These facts demonstrate that Bowman could not have had actual knowledge of a particularized injury when he called the Drake Hotel and filed his Complaint, because the pool was in fact closed to the public at the time. There was no existing injury of which Bowman could have had actual knowledge in the first place: no one, disabled or non-disabled, was able to use the pool at the time. Furthermore, Kisan's evidence shows that, as of approximately two months prior to the date Bowman filed suit, Kisan already had specific plans to install a pool lift.

Bowman does not allege that his planned stay would have occurred at a time when Kisan's pool was open to the public but not ADA compliant. Bowman also provides no competent countervailing evidence to rebut Kisan's contention that it was, in fact, planning to bring the pool into compliance in connection with opening the pool to the public. The Hull Declaration, filed in support of Bowman's complaint, purports to attach pictures of the pool as of

7

June 27, 2013 (the date of Bowman's complaint) without a pool lift. These pictures do not establish that the pool was "open" to the public at the time. The pictures contain no indication that the pool was actually in use when the pictures were taken, there is a fountain in the middle of the pool that Kisan claims was only used for maintenance purposes when the pool was not being used for an extended period of time, the pictures depict a broken fence (the reason for closing the pool in the first place), and Kisan has presented a copy of a Department of Health Inspection Report demonstrating that the pool was in fact closed by state regulators at the time, pending repairs. The pictures presented by Bowman are therefore consistent with the sworn representations of Kisan's manager: Kisan did not open the pool to the public until July 2013 – *after* Bowman filed suit – and Kisan installed the ADA-compliant lift on July 12, 2013 pursuant to a purchase order that predated Bowman's Complaint by several weeks. Furthermore, tellingly, in the Dodson Declaration, Dodson claims to have visited the Drake Hotel on January 30, 2014 and to have observed additional ADA violations on that date, but she makes no reference to the pool lift – presumably because the alleged pool lift violation had long been rectified by that point. Accordingly, as a factual matter, Bowman did not suffer particularized injury and the court lacks subject matter jurisdiction over Bowman's claims because of lack of standing.

Furthermore, Kisan's facial attack has merit because Bowman fails to allege facts supporting a reasonable inference that he faced an immediate threat of prospective injury. With respect to the "injury in fact" element, a plaintiff seeking injunctive relief must show that "he is under threat of suffering an injury in fact." *Gaylor*, 2014 WL 4357398, at *3 (internal quotation and brackets omitted). "The threat of a prospective injury must be real and immediate and not premised upon the existence of past injuries alone." *Id.* (citing *City of Los Angeles v. Lyons*, 461

U.S. 95, 102-03 (1983)) (internal quotation omitted). Where a plaintiff has actually encountered a physical barrier, a plaintiff demonstrates the requisite threat of future injury where he establishes (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers. *Gaylor*, 2014 WL 4357398, at *4.[6] In assessing whether a plaintiff has shown either of these means of demonstrating the requisite threat of future injury, courts often look to the following factors: (1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant. *See Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005); *Wilson v. Costco WholeSale Corp.*, 426 F. Supp.2d 1115, 1119 (S.D. Cal. 2006).[7] In *Gaylor*, for example, the Sixth Circuit found that the plaintiff had shown a plausible likelihood of future harm, where the plaintiff alleged a "history of visiting Chattanooga," that he "visited and attempted to patronize [the defendant's] store numerous times," that he personally suffered injury in the defendant's parking lot, that he had specific reasons for making "regular trips" to Chattanooga and for why he "particularly enjoys" visiting the shopping center in which the defendant was located, and that he had a specific plan to visit his sister-in-law in Chattanooga at the end of the month. *Id.*

---

[6] The *Gaylor* standard for prospective injury relies on "returning" to the site of the ADA violation, reinforcing that a plaintiff must allege sufficient personal knowledge of an actual continuing ADA violation to maintain standing to sue.

[7] Some courts sensibly have observed that the "proximity" factor is, at a minimum, less relevant to hotels. *See Fiedler v. Ocean Properties, Ltd.*, 683 F. Supp. 2d 57, 72 n.17 (D. Me. 2010).

Here, Bowman makes only conclusory and insufficient allegations concerning his intent to return. In ¶ 21, he alleges that "Plaintiff, or an agent of Plaintiff, intends to return and/or has returned to Defendant's Hotel to ascertain whether it remains in violation of the ADA." This sentence is pure boilerplate and fails to allege with any degree of specificity that Bowman himself intends to return to the Drake Hotel. Paragraph 21 also states, without any further explanation, that "Plaintiff expects to return to Nashville on business and seeks to use Defendant's hotel." Unlike the allegations in *Gaylor* and other cases cited by Bowman, this conclusory statement is insufficient to support a plausible inference that Bowman actually intends to return to the Drake Hotel or that he has been deterred from visiting the hotel again because of its alleged lack of a pool lift.[8] Bowman does not allege that he travels to Nashville often, that he has some fixed engagement or specific future plans related to Nashville, or even that he has any particular motivation (family, friends, a particular fraternal organization, etc.) to visit Nashville or to stay at the Drake Hotel in the future. In the face of Kisan's facial challenge, Bowman has failed to meet his burden to show that his allegations plausibly support the prospect of "actual" or "imminent" injury from Kisan's alleged failure to include a pool lift.

Finally, as a matter of fact, Kisan's alleged failure to include a pool lift could not have supported a threat of actual or imminent injury to Bowman at the time he brought this lawsuit. Kisan already had a fixed intent to install an ADA-compliant pool lift when Bowman filed suit. If Bowman had made a reasonable effort to inquire as to Kisan's intentions, he would have learned that Kisan was simply awaiting installation of the lift by its contractors, which actually occurred just two weeks after Bowman filed his Complaint. At any rate, as of June 27, 2013,

---

[8] Again, Bowman's assertion that a pool lift deterred him from staying at the Drake is a false premise for the reasons previously stated.

even if Bowman did intend to visit the hotel at some unspecified point in the future, he faced no legitimate prospect of actual or imminent harm. Kisan's factual challenge related to the actual or imminent injury requirement also has merit and Bowman lacks standing for this additional reason.

As to the other alleged ADA violations, Bowman does not allege that he personally encountered those violations or that he made a call to the hotel about them (as he did with respect to the pool lift). These discoveries, which apparently were made by individuals other than Bowman after he filed the Complaint, plainly did not independently provide Bowman with standing to sue, nor could they have done so retroactively.[9] *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 524 (6th Cir. 2001) (standing is determined as of the date the complaint is filed); *see also Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957) (stating that, as standing, "jurisdiction is tested by the facts as they existed when the action [was brought]" and "that after vesting, it cannot be ousted by subsequent events").

In sum, Bowman lacks standing to sue for multiple reasons and his claims will therefore be dismissed.[10]

## II. **Mootness**

---

[9] If Bowman had standing to assert claims related to the pool lift in the first place – the only claim for which he meaningfully asserts standing – the issue of whether Bowman could also assert additional ADA violations for which he otherwise would not have standing (*i.e.*, those added in his Amended Complaint) would present a different question.

[10] In dismissing Bowman's claims with prejudice, the court makes no findings concerning the merits of Bowman's allegations concerning ADA violations by Kisan other than the pool lift. In other words, other than with respect to the pool, the court's dismissal order is not intended to preclude a plaintiff *with standing* from asserting Title III ADA violations by Kisan (other than with respect to the pool lift).

Although the court need not reach the issue, for purposes of a potential appeal the court will also address Kisan's mootness challenge.

"Under the 'case or controversy' requirement in Article III of the United States Constitution, federal courts only have jurisdiction to decide cases that affect the rights of litigants." *Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 404 (6th Cir. 2006). The doctrine of mootness is satisfied when events subsequent to the filing of a complaint make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008). Here, the court is satisfied that, as of July 12, 2013 – nine days after Bowman filed his Complaint – Kisan had installed the pool lift in compliance with the ADA. Bowman presents no competent evidence to the contrary. To the extent that Kisan arguably was out of compliance with the ADA for a handful of days after the date of the Complaint, Kisan voluntary ceased the alleged injury-causing conduct, thereby mooting Bowman's claim as it related to the pool lift. *See Summers v. First State Bank*, 2014 WL 4206897, at *4-*6 (M.D. Tenn. Aug. 25, 2014); *Welchly v. First Bank*, 2014 WL 2615808, at *7 (M.D. Tenn. June 12, 2014); *Welchly v. Cadence Bank, N.A.*, 2014 WL 271629, at *3 (M.D. Tenn. Jan. 23, 2014); *Scott v. Cash to Go*, 2013 WL 1786640, at *3 (M.D. Fla. Apr. 26, 2013); *Norkunas v. Tar Heel Capital Wendy's LLC*, 2011 WL 2940722 (W.D.N.C. July 19, 2011). The issue of Kisan's compliance related to the pool lift is therefore moot. Because this ADA claim was moot at the time Bowman filed his Amended Complaint, the court lacks subject matter jurisdiction over the additional ADA violations alleged for the first time in Bowman's Amended Complaint. Bowman's claims are subject to dismissal for these reasons as well.

## **CONCLUSION**

For the reasons set forth herein, Kisan's Motion to Dismiss will be granted and Bowman's claims will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge